# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **KYLE BLEVINS,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17CV00012 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **WILLIAM BOOKER,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Steven R. Minor, Elliott Lawson & Minor, Bristol, Virginia, for Plaintiff; Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Defendant.*

This is a diversity action under Virginia substantive law for breach of contract and fraud arising from an alleged agreement to operate a drive-in movie theater.  The defendant has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  For the reasons that follow, I will deny the defendant's Motion to Dismiss as to the plaintiff's claims for breach of contract and grant the defendant's Motion to Dismiss as to the claim asserting fraud.

## I.  FACTUAL SUMMARY.

The Complaint alleges the following facts, which I must accept as true for the purpose of deciding the present motion.

The defendant, William Booker, is the owner of the Moonlite Theater (hereinafter "the Moonlite"), a drive-in movie theater located in this judicial district. In September 2016,[1] the plaintiff, Kyle Blevins, and Booker entered into a handwritten agreement (hereinafter "the Handwritten Agreement") that stated as follows:

> *Agreement between William Booker & Kyle Blevins*
>
> *We agree to together join in a partnership to restore and reopen the Moonlite Theatre in Abingdon, VA.*
>
> *Kyle Blevins will provide all funds to restore & refurbish all buildings and grounds, & operate Business.*
>
> *William Booker will provide property as his contribution to the partnership.*
>
> *As an act of good faith Kyle Blevins will begin construction and at the point it is open for business and the first movie shown, William and Kyle will execute a partnership agreement upon this.*
>
> *Kyle Blevins will have 51% ownership and William Booker will have 49% of the real este [sic] & business.*
>
> *Kyle will operate business and give William 49% of net profit.*
>
> *Other considerations will be included in the formal agreement to follow.*

Compl. Attach. 1-2, ECF No. 1-1. Both Booker and Blevins signed the bottom of the document.

---

[1] The Handwritten Agreement is dated September 20, 2016, at the top of the document, but the parties' signatures at the bottom of the document are dated September 15, 2016. Compl. Attach. 1-2, ECF No. 1-1.

After the parties signed the Handwritten Agreement, Blevins began restoring and refurbishing the Moonlite pursuant to the Agreement; eventually, the Moonlite was opened to the public, and the first movie was shown. In performing this work, Blevins purchased equipment, provided labor, and solicited donations of time and money from members of the community. He also paid an attorney to draw up documents for the formation of a new limited liability company named, "Historical Moonlite LLC." Ultimately, Blevins spent more than $20,000 on this endeavor. Compl. ¶¶ 11-12, ECF No. 1.

After the Moonlite showed its first movie — the point at which the Handwritten Agreement called for the execution of a "partnership agreement" — Booker declined to sign the documents for "Historical Moonlite LLC." He refused to convey the real property on which Moonlite was located and later engaged a realtor to sell the property. Booker also forbade Blevins from entering the property. Eventually, the Moonlite closed and was subsequently vandalized. *Id.* at ¶¶ 13-14.

On March 17, 2017, Blevins brought this action against Booker for breach of contract and fraud. Blevins seeks specific performance of the Handwritten Agreement (Count One). He also seeks either money damages for breach of contract or restitution under a theory of unjust enrichment (Count Two).

Alternatively, Blevins seeks compensatory and punitive damages for fraud in the inducement (Count Three).

On April 28, 2017, Booker filed a Motion to Dismiss all three counts of the Complaint. ECF No. 7. As to Counts One and Two, he argues that the Handwritten Agreement is not an enforceable contract, but rather an unenforceable "agreement to agree," and that as a result, neither specific performance nor damages for breach are available. Mem. Supp. Mot. to Dismiss 4-7, ECF No. 8. As to Count Three, Booker argues that the Complaint fails to plead fraud with sufficient particularity and must therefore be dismissed. *Id.* at 7-12. Booker does not, however, seek to dismiss Blevins' Count Two claim for restitution under a theory of unjust enrichment. See *id.* at 7 n.1.

The Motion to Dismiss has been fully briefed and is ripe for decision.[2] For the reasons stated, I deny the motion as to the claims for breach of contract and grant the motion as to the claim for fraud in the inducement.

## II. APPLICABLE LAW.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not significantly aid the decisional process.

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, and it must view those facts in the light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

Claims for fraud are subject to a higher pleading standard: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

### III. DISCUSSION.

### A. Breach of Contract.

Blevins requests specific performance (Count One) and monetary damages (Count Two) for breach of express contract. Compl. ¶¶ 17, 21, ECF No. 1. Booker contends that Blevins' claim for breach of express contract must be dismissed because the Handwritten Agreement "fails to state the essential and material terms" and "expressly provides that other unidentified considerations will be incorporated into the future partnership agreement" and is therefore not an enforceable contract. Mem. Supp. Mot. to Dismiss 7, ECF No. 8. Blevins asserts

in response that the Handwritten Agreement is an enforceable contract and that its "simplicity . . . does not make it uncertain or unenforceable." Mem. Opp'n Mot. to Dismiss 2, ECF No. 9.

To state a valid claim for breach of contract under Virginia law, a plaintiff must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ramos v. Wells Fargo Bank, NA*, 770 S.E.2d 491, 493 (Va. 2015) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). Thus, if Blevins' Complaint does not adequately plead the existence of a "legally enforceable obligation" — that is, a contract — his claim for breach of contract cannot be sustained, and must be dismissed.[3]

### 1. Reasonably Certain Terms.

The "essential elements of a valid contract" are "a complete agreement including acceptance of an offer as well as valuable consideration." *LongView Int'l Tech. Sols., Inc. v. Lin*, No. 160228, 2017 WL 1396062, at *2 (Va. Apr. 13, 2017) (quoting *Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 39 (Va. 1995)). However, an agreement may nevertheless be unenforceable if "a material term in

---

[3]   Booker does not contend that Blevins has failed to plead facts sufficient to allege the second and third elements of his claim for breach of contract. As such, in deciding the Motion to Dismiss, I consider only whether Blevins has sufficiently pleaded the first element of his claim.

the agreement 'is too vague and indefinite to be enforced.'" *Id.* at \*3 (quoting *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 819 (Va. 1981)).

Booker asserts that the Handwritten Agreement cannot be specifically enforced because it lacks the "essential elements of price and terms of sale." Mem. Supp. Mot. to Dismiss 5, ECF No. 8 (citing cases). He also notes that the Agreement "does not . . . impose upon Blevins the obligation to invest an amount certain"; "does not define the extent and limits of [Blevins'] obligation to 'restore and refurbish'" the Moonlite; "does not state whether Booker is to contribute the real estate, equipment, or both"; and "does not define" what it means to "operate the business." *Id.* at 4. In short, Booker contends that the Handwritten Agreement is not an enforceable contract because it fails to "set out [a] specific price" and is uncertain and indefinite in its terms. *Id.* at 5. I disagree.

It is true that price is a "material term" in "all contracts of sale" and that "[i]n the absence of [a] provision either stating it or furnishing a mode for fixing it, the agreement would be plainly incomplete and could not be enforced." *Berry v. Wortham*, 30 S.E. 443, 444 (Va. 1898). However, the Handwritten Agreement is not a contract of sale. Blevins emphasizes in his Complaint the provision of the Agreement requiring Booker to convey real estate, but in reality, the Agreement provides the basis for a partnership; Booker's conveyance of real estate is only a part of that partnership and of the Agreement itself. The Handwritten Agreement

is not a contract of sale, and thus, inclusion of a fixed price, or of a method for fixing a price, is not a required material term.

Booker also relies on *Allen v. Aetna Casualty and Surety Company*, a non-sale case in which the court found an agreement unenforceable where "[n]o sum was specified . . . nor was any method or formula alleged for determining the amount payable in settlement." 281 S.E.2d at 820. The facts of *Allen*, however, are readily distinguishable. In *Allen*, the defendant, Aetna, "bargain[ed] for and obtain[ed] plaintiff's agreement not to retain counsel to prosecute his claim in exchange for (Aetna's) promise to effect full and final settlement with him. Aetna subsequently breached this agreement." *Id.* at 819 (internal quotation marks omitted). The court concluded the agreement was unenforceable, noting that the agreement did not specify a dollar amount for the "full and final settlement" and concluding that "[a] court should not determine the terms of the settlement upon which the parties might ultimately agree." *Id.* at 819-20.

The question of whether a contract is "void for indefiniteness and uncertainty" depends on whether there is "mutual assent of the contracting parties to terms *reasonably certain under the circumstances*." *Id.* at 820 (emphasis added). In *Allen*, the agreement simply provided that the plaintiff would give up his right to sue in exchange for a "full and final settlement." *Id.* at 819. Under the circumstances of that case, the term "full and final settlement" was far from

"reasonably certain"; indeed, an eventual settlement could have encompassed virtually any amount. It would therefore have been impossible for the court to "determine the terms of the settlement upon which the parties might ultimately agree" and, thus, impossible for the court to "afford[ ] a remedy for . . . breach" of the agreement. *Id.* at 820.

Here, by contrast, the Handwritten Agreement provides that Blevins will provide restoration funds, that Booker will provide property, that the two will execute a partnership agreement, that Blevins will own 51% and Booker will own 49% of the real estate and business, and that Blevins will operate the business and give Booker 49% of the profits. Booker argues that because the Agreement does not define "the exact parameters of Blevins' obligation . . . to spend money" to restore the Moonlite, it is therefore void for uncertainty. Mem. Supp. Mot. to Dismiss 6, ECF No. 8. However, although these terms do not specify a particular "sum" that Blevins must provide, they do specify that Blevins must provide "all funds to restore & refurbish all buildings and grounds" — that is, they require that Blevins provide the funds to accomplish a reasonably certain objective. Compl. Attach. 1, ECF No. 1-1. These terms are in stark contrast to the unenforceable terms in *Allen*, which merely stated the parties would reach some nebulous "full and final settlement." 281 S.E.2d at 819. The terms in the Handwritten Agreement in this case provide the court with a "reasonable basis for affording a remedy for

. . . breach" of the agreement and are therefore "reasonably certain under the circumstances" of this case. *Id.* at 820.

Moreover, "the law does not favor declaring contracts void for indefiniteness and uncertainty." *LongView*, 2017 WL 1396062, at *3 (quoting *Reid v. Boyle*, 527 S.E.2d 137, 143 (Va. 2000)). In order for a contract to be deemed unenforceable, "[t]he indefiniteness must reach the point where construction becomes futile . . . Invalidating a contract on the ground that it is indefinite should be a last resort." *Id.* (internal quotation marks and citation omitted). It is clear that construction of the Handwritten Agreement is far from "futile"; on the contrary, as I note above, its terms are reasonably certain, and are certainly not so murky as to require the "last resort" of invalidation. Thus, I decline to find that the Handwritten Agreement is unenforceable for indefiniteness and uncertainty.

## 2. Intent to Be Bound.

Booker also asserts that the Handwritten Agreement is an unenforceable "agreement to agree" because it states that the parties "will execute a partnership agreement" and that "[o]ther considerations will be included in the formal agreement to follow." Compl. Attach. 1, ECF No. 1-1; Mem. Supp. Mot. to Dismiss 4, ECF No. 8. An agreement to agree, "without specifying more, constitutes only an agreement to negotiate at a later date" and is unenforceable. *Allen*, 281 S.E.2d at 819. However, "where . . . the parties are fully agreed upon

the terms of the settlement and intend to be bound thereby, the mere fact that a later formal writing is contemplated will not vitiate the agreement." *LongView*, 2017 WL 1396062, at *2 (internal quotation marks and citations omitted).

"In considering whether an agreement is an enforceable contract or merely an agreement to agree, courts consider whether the document at issue includes the requisite essential terms and also whether the conduct of the parties and the surrounding circumstances evince the parties' intent to enter a contract." *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 876 F. Supp. 2d 672, 678 (E.D. Va. 2012) (citing *High Knob, Inc. v. Allen*, 138 S.E.2d 49, 53 (Va. 1964)). "[A]n agreement to 'negotiate open issues in good faith' to reach a 'contractual objective within [an] agreed framework' will be construed as an agreement to agree rather than a valid contract." *Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*, No. 3:11CV630, 2012 WL 2905110, at *4 (E.D. Va. July 16, 2012) (quoting *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 491 (E.D. Va. 2002)). However, where "it is clear that the parties intended to enter into a binding contractual relationship and the agreement contains sufficient objective criteria to enforce," the agreement is enforceable. *Cyberlock Consulting*, 876 F. Supp. 2d at 678 (quoting *EG & G, Inc. v. Cube Corp.*, No. 178996, 2002 WL 31950215, at *7 (Va. Cir. Ct. Dec. 23, 2002)). I have already determined, see *supra*, that the Handwritten Agreement contains "sufficient objective criteria to

enforce." *Cyberlock Consulting*, 876 F. Supp. 2d at 678.  I therefore turn now to the question of whether the parties' conduct and surrounding circumstances have evinced an intent to enter into a binding contract.

"In determining whether there is mutual assent, courts look first to the language of the agreement itself." *Va. Power Energy Mktg.*, 2012 WL 2905110, at *5 (citations omitted); *see also LongView*, 2017 WL 1396062, at *2.  Here, the parties titled the document an "Agreement."  Compl. Attach 1, ECF No. 1-1.  It opens by stating that Booker and Blevins "agree to together join in a partnership." *Id.*  It goes on to say that "[Booker] and [Blevins] *will* execute a partnership agreement" and that "Blevins *will* provide all funds," "Booker *will* provide property," "Blevins *will* begin construction," "Blevins *will* have 51% ownership," "Booker *will* have 49% [ownership]," and that "[Blevins] *will* operate [the] business and give [Booker] 49% of net profit." *Id.* at 1-2 (emphasis added).  The Agreement closes by stating that "[o]ther considerations will be included in the formal agreement to follow." *Id.* at 2.

The Handwritten Agreement, on its face, evinces an intent to be bound.  The parties declared their document to be an "Agreement," rather than a "Letter of Intent" or other less-certain item. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002) (noting that "[c]alling a document a 'letter of intent' implies . . . that the parties intended it to be a nonbinding

expression in contemplation of a future contract"). They also state that they "agree to . . . join in a partnership" and that they "will" do certain things in furtherance of this goal. Compl. Attach. 1-2, ECF No. 1-1. Such language unambiguously indicates an intent to perform and be bound. *See LongView*, 2017 WL 1396062, at *1, 3 (finding that the parties intended to be bound where the agreement stated they "shall" make certain payments); *Cyberlock Consulting*, 876 F. Supp. 2d at 679 (finding that the parties intended to be bound where the agreement stated they "will" perform certain obligations). In addition, although Booker and Blevins expressly contemplate a "formal agreement to follow," Compl. Attach 2, ECF No. 1-1, they do not "contemplate[ ] the possibility that the future transaction . . . might not ever come to fruition." *Va. Power Energy Mktg.*, 2012 WL 2905110, at *6 (finding agreement unenforceable where "the parties indicated," via the language of the agreement, that "the transaction might not take place"). There is no language in the Agreement indicating any doubt as to whether the formal agreement will be executed; on the contrary, the parties states that any "[o]ther considerations *will* be included in the formal agreement to follow." Compl. Attach. 2, ECF No. 1-1 (emphasis added).

Moreover, the Handwritten Agreement is not made contingent on the execution of, or on the inclusion of any specific terms within, the "formal agreement to follow." Where a preliminary agreement is expressly made "subject

to execution of a formal agreement," the inclusion of that "subject to" clause "evince[s] an intent by the parties to avoid being bound until a formal contract ha[s] been prepared, approved, and executed." *LongView*, 2017 WL 1396062, at *3 (citing *Golding v. Floyd*, 439 S.E.2d 735, 737 (Va. 2001)). By contrast, where a preliminary agreement "does not contain such a clause," it is "not dependent for its efficacy upon the execution of a formal contract," and the fact that the parties "express[ly] . . . contemplate[d] that [they] would draft a more comprehensive agreement" does not preclude enforcement of the preliminary agreement. *Id.* at *2-3. In *LongView*, the preliminary agreement "ma[de] clear that the contemplated formal contract was to set forth 'more fully' the 'terms of settlement' identified in the [agreement] — not diverge from those terms." *Id.* at *2. The Handwritten Agreement is similar: it is clear from its language — "[o]ther considerations will be included" — that the contemplated "formal agreement to follow" would merely expand on the terms of the partnership, rather than alter the terms already set forth. Compl. Attach. 2, ECF No. 1-1.

In addition to considering the language of an agreement, in determining whether there was mutual assent, courts may also look to the conduct of the parties and other surrounding circumstances. *Cyberlock Consulting*, 876 F. Supp. 2d at 678; *see also LongView*, 2017 WL 1396062, at *2 n.3 (noting that the defendant's conduct was also a relevant consideration). A preliminary agreement has been

held enforceable where its terms were "clear and definite" and the parties "clear[ly] inten[ded] . . . to establish a close working relationship" and subsequently "operated under the agreement[ ]." *EG & G, Inc.*, 2002 WL 31950215, at *7-13.

Taking the facts alleged in the Complaint as true, it appears that the actions of both parties indicate an intention to be bound. To begin, they both signed the Handwritten Agreement[4] and, in so doing, agreed to enter a business partnership together. Such an agreement is analogous to the exclusive working relationship underlying the agreement found enforceable in *EG & G*. In addition, the parties' conduct following the signing of the Agreement suggests they both, at least initially, intended to perform their respective obligations. Blevins began working to restore and refurbish the theater and its grounds, and through his efforts, the Moonlite opened to show its first movie. Compl. ¶ 11, ECF No. 1. During the restoration process, Booker permitted Blevins and other members of the community to enter the property to perform this work. *Id.* Booker does not allege that he was unaware of Blevins' activities on the Moonlite's property, and he banned Blevins from the property only after he refused to sign the papers Blevins had drawn up. Had Booker not intended to be bound by the Agreement, common sense suggests he would have evicted Blevins from the property at the outset of the

---

[4] Booker specifically "denies that he signed the purported agreement," Mem. Supp. Mot. to Dismiss 2, ECF No. 8, but Blevins' Complaint, which I must accept as true for the purpose of deciding this motion, alleges that Booker did sign the agreement. Compl. ¶ 7, ECF No. 1.

restoration, rather than waiting until the work was completed. Booker's actions therefore suggest that he intended to be bound by the terms of the Handwritten Agreement.

Based on the language of the Handwritten Agreement, the parties' actions, and the circumstances of the case, I decline to find, at this early stage of the litigation, that the parties did not intend to be bound. Thus, because I find that the Handwritten Agreement contains reasonably certain terms and is therefore not unenforceable for uncertainty, and because I find that Blevins has plausibly demonstrated that the parties intended to be bound by the Handwritten Agreement, I conclude that Blevins has sufficiently alleged a breach of contract claim for purposes of surviving a motion to dismiss. I therefore deny the motion as to Counts One and Two.

## B. Fraud in the Inducement.

Blevins alternatively raises a claim for fraud in the inducement and requests compensatory and punitive damages (Count Three). Compl. ¶¶ 23-26. He alleges that "by signing the Handwritten Agreement, . . . Booker misrepresent[ed] his willingness to" perform and that "Booker's representation that he intended to perform . . . was false and intended to mislead . . . Blevins into making improvements to the Moonlite." *Id.* ¶ 24. Booker contends in response that Blevins' "mere naked allegation that Booker misrepresented his willingness to

perform when he allegedly executed the Handwritten Agreement is insufficient . . . to state a claim for fraud." Mem. Supp. Mot. to Dismiss 10, ECF No. 8. I agree.

To state a valid claim for fraud in the inducement under Virginia law, a plaintiff must allege that the defendant (1) falsely represented a material fact (2) for the purpose of procuring the contract, and that the plaintiff (3) relied on that representation and (4) was induced by it to enter the contract. *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 255 S.E.2d 682, 683 (Va. 1979); *Brame v. Guarantee Fin. Co.*, 124 S.E. 477, 481 (Va. 1924). Fraud in the inducement is "ground for rescission of the contract" as well as "for an action for damages." *Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 489 (Va. 2010) (quoting *George Robberecht Seafood*, 255 S.E.2d at 683). Importantly, a claim for fraud in the inducement requires more than a mere allegation that the defendant failed to fulfill his promises under the contract; "otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Id.* at 490 (quoting *Lloyd v. Smith*, 142 S.E. 363, 365 (Va. 1928)); *see also Out of Chaos, Ltd. v. AON Corp.*, 15 F. App'x 137, 142 (4th Cir. 2001) (unpublished) (noting that where "the allegations of fraud . . . are nothing more than allegation[s] of negligent performance of contractual duties, such alleged breaches of duty are not actionable in tort") (internal quotation marks and citation omitted). Instead, the plaintiff must allege facts demonstrating that the defendant, at the time the contract was entered into,

never intended to abide by its terms. *Id.* (citing *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 348 (Va. 1998)); *see also Abi-Najm*, 699 S.E.2d at 489 (citing *Boykin v. Hermitage Realty*, 360 S.E.2d 177, 178-79 (Va. 1987)).

In addition, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also, e.g.*, *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (applying Rule 9(b)'s pleading requirement to state law claims); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (noting that "[i]t is established law . . . that Rule 9(b)'s particularity requirement applies to state-law causes of action"). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as failure to state a claim under Rule 12(b)(6)." *Dunn v. Borta*, 369 F.3d 421, 426 (4th Cir. 2004) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999)).

Blevins fails to sufficiently plead the first element of his claim for fraud in the inducement. As I note above, a plaintiff must "allege facts that demonstrate the defendant's intent . . . never to abide by the terms of the contract." *Out of Chaos*, 15 F. App'x 142. A court should "dismiss a complaint under Rule 9(b)" if it is not satisfied that the "plaintiff has substantial prediscovery evidence of [the] facts" that supposedly constitute fraud. *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th

Cir. 2015) (quoting *Harrison*, 176 F.3d at 784); *see also* Fed. R. Civ. P. 9(b) (requiring plaintiffs to "state with particularity the circumstances constituting fraud"). Blevins has not sufficiently demonstrated that he has any evidence of such facts.

Blevins fails to allege any facts supporting his assertion that Booker did not intend to fulfill his obligations at the time he entered into the Agreement. The Complaint states only that "by signing the Handwritten Agreement, . . . Booker misrepresent[ed] his willingness to do the things that were required under the terms of that Agreement" and that "Booker's representation that he intended to perform under the Handwritten Agreement was false." Compl. ¶¶ 23-24, ECF No. 1. These are merely conclusory allegations and are insufficient to state a claim for fraud in the inducement. *See McDevitt St. Bovis*, 507 S.E.2d at 348 (affirming trial court's dismissal of claim for fraud in the inducement on the ground that "[n]othing in the record suggests that [the defendant] did not intend to fulfill its contractual duties at the time it entered into the [contract]" (citation omitted)). Thus, I conclude that Blevins' claim for fraud in the inducement must be dismissed for failure to state a claim upon which relief can be granted.[5]

---

[5] Because I find that Blevins has not sufficiently pleaded the first element of his claim, I need not consider whether he has sufficiently pleaded the remaining elements. However, I will note that because a plaintiff may make "conclusory allegations . . . of [a] defendant's intent to deceive," *Harrison*, 176 F.3d at 784 (citing, *inter alia*, Fed. R. Civ. P. 9(b)), Blevins has sufficiently pleaded the second element by alleging that Booker

IV.  CONCLUSION.

For the foregoing reasons, it is **ORDERED** as follows:

1.  The defendant's Motion to Dismiss (ECF No. 7) is DENIED in part and GRANTED in part;

2.  The Motion to Dismiss is DENIED as to Counts One and Two (breach of express contract); and

3.  The Motion to Dismiss is GRANTED as to Count Three (fraud in the inducement).[6]

ENTER:   June 1, 2017

/s/  James P. Jones
United States District Judge

---

"intended to mislead [him] into making improvement to the Moonlite."  Compl. ¶ 24, ECF No. 1.

[6]  The plaintiff requests in his reply to the Motion to Dismiss that he be granted leave to amend "if the Court finds necessary elements missing from the Complaint." Mem. Opp'n Mot. to Dismiss 4, ECF No. 9.  Because the case is not dismissed, a future motion to amend setting forth the proposed amendment may be available to the plaintiff under Rule 15 so long as not untimely and accordingly I find that granting leave to amend now is unnecessary.